MONCLOVA, APPELLANT, *v.* REXACH, RESPONDENT.

APPEAL from the District Court of Arecibo.

·No. 917.—Decided April 29, 1913.

POSSESSORY TITLE PROCEEDINGS—EVIDENCE—OPPOSITION.—In possessory title proceedings the evidence of the petitioner must be limited to the fact of the possession by him in his own name and no opposing interested party will be heard except upon the specific fact of the possession in his own name alleged by the petitioner. Such opposition to possession by the petitioner in his own name should be made in the possessory title proceeding and either be sustained or overruled therein.

ID.—OPPOSITION—QUESTION OF LAW—DECLARATORY ACTION—INTERESTED PARTY.— Any opposition in possessory title proceedings involving a question of law should be raised and determined in the proper declaratory action, and it cannot be raised by any person whomsoever but only by the party having an interest or right in the real property the possession of which is in question.

ID.—OPPOSITION—DECLARATORY ACTION—OWNERSHIP BY PRESCRIPTION—POSSESSION AS OWNER.—In a declaratory action brought to oppose possessory title proceedings based upon the fact that the opposing party has acquired the ownership of the property by prescription, it must be alleged that the possession has been as owner because such possession is the only possession which may serve as· a title· to acquire ownership.

ID.—OPPOSITION—DECLARATORY ACTION.—Even when in a declaratory action to oppose possessory title proceedings it is not proven that the defendant and petitioner in the possessory proceedings is the owner of the real property involved, this fact is not sufficient to warrant a decree that the property belongs to the plaintiff and opposer.

The facts are stated in the opinion.

*Mr. Luis Freyre Barbosa* for appellant.

*Mr. Antonio Sarmiento* for respondent.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

Proceedings having been brought by Agustín Rexach y Dueño, as vicar of Arecibo and representative of the Monserrate Hermitage of said city, in the District Court of Arecibo in accordance with the Mortgage Law and its Regulations to prove possessory title to four parcels of land, said proceedings were opposed by Juan Monclova, who filed in said court on March 3, 1912, a declaratory complaint against

Rexach y Dueño alleging therein as the fundamental grounds for his opposition the following facts:

*First.* That in December, 1910, he acquired from Dolores López Cruz, acting in her own behalf and in representation of her minor children, José Monserrate and Federico Beltrán López, under proper judicial authorization, a house made of native lumber and covered with galvanized-iron roofing measuring 6.50 by 7.60 meters, said house being constructed on a lot containing approximately the same area plus a strip of land 2.30 meters wide by 2.90 meters long, said lot being bounded on the north by the Monserrate hospital; on the south by a house belonging to Isidoro Rodríguez; on the east by a house that belonged to Catalina Córdova, being now the property of Reverend Agustín Rexach; and on the west by a house that belonged to José Beltrán and is now the property of Felipe Serrano.

*Second.* That after said acquisition he sold the strip of land described in the preceding paragraph to Reverend Rexach.

*Third.* That the plaintiff has never made any payment for the lot on which the house described is constructed, nor were any payments ever made by the former owners.

*Fourth.* That notwithstanding the uninterrupted possession of the said lot by himself and by the former owners for a period of more than 30 years, Rexach y Dueño, vicar of the Catholic church of Arecibo, representing the Monserrate Hermitage, had brought possessory title proceedings alleging that the said hermitage has been in possession for 75 years, as a benevolent legacy made by Calixto Soto, of four parcels of land, one of which contained 1,626 square meters and is bounded on the east by an alley running into Nueva Street (*tavesía de la Calle Nueva*) of Arecibo; on the west by the lands of the Monserrate Hermitage; on the north by Monserrate Square; and on the south by Nueva Street, within which parcel the house and lot of the plaintiff, Monclova, are included.

*Fifth.* That the said benevolent legacy to which Rexach refers does not embrace the four parcels of land the possessory title to which he seeks to prove.

*Sixth.* That even if the lot of the plaintiff were included in said benevolent legacy, neither the Monserrate Hermitage nor its representatives have ever been in possession thereof, whereas the plaintiff and the previous occupants have held possession for more than 30 years without paying any rent and without recognizing any one as the lawful owner thereof.

Monclova concludes with the prayer that judgment be rendered dismissing the possessory title proceedings in so far as concerns the lot described, decreeing that said lot is the property of the plaintiff by virtue of extraordinary prescription and taxing the costs, expenses, and attorney's fees of this action against the defendant.

Defendant's answer to the complaint is as follows:

As a first ground of defense he denies generally each and every allegation of the complaint.

As a second ground of defense he alleges that in representation of the Monserrate Hermitage he has brought proceedings in the District Court of Arecibo, in the absence of a recordable title, to convert into a title of ownership the possession of four parcels of land or lots that he has held for 75 years as a benevolent legacy from Calixto Soto, said four parcels of land or lots being situated in the Monserrate ward of Arecibo at the place called *"El Cerro de la Monserrate,"* the exclusive ownership of which is in the Monserrate Hermitage, which has held and enjoyed quiet, peaceful, and public possession thereof under lawful title, in good faith, and without interruption of any kind since the acquisition thereof.

And as a third ground of defense he contends that, even admitting the truth of the statements made by the adverse party the cause of action of said party, if he had had any, is already extinguished by prescription in favor of the Monserrate Hermitage in accordance with paragraph 1 of the

General Order of April 4, 1899, articles 1957, 1960, and 1963 of the Spanish Civil Code, and sections 1840, 1858, 1861, and 1864 of the Revised Civil Code.

The trial having been had, on July 13, 1912, the court rendered judgment decreeing that the law and the facts were in favor of the defendant, Rexach y Dueño, consequently dismissing the counter-complaint with costs against the counterplaintiff, from which judgment the attorney for Monclova appealed to this court.

After examining all the evidence, both oral and documentary, introduced at the trial, the attorney for the appellant alleged the following legal grounds of appeal:

*First.* That the court below erred in considering as proven the existence of the benevolent legacy by Calixto Soto on which is based the possessory right claimed by the respondent, as none of the witnesses who testified made any mention of such legacy, and in case of its existence it should have been shown by the donor in some public or private document which should have been produced as evidence at the trial.

*Second.* That the lower court also erred in considering that the lands known by the name of *"El Cerro de la Monserrate"* have been for a long time past under ecclesiastical control for the fostering of religious worship at the Monserrate Hermitage agreeably to the wishes of its founder, when it was shown by historical data that Calixto Soto was neither the founder of the hermitage nor the owner of the land on which it was constructed.

*Third.* That the court likewise committed error in finding that the possession for nearly 60 years of the property constituting the endowment of a charitable institution establishes a lawful title to its acquisition, when neither the existence of the endowment nor the possession of said property for the said length of time has been proved.

*Fourth.* That considering as we are a benevolent legacy dating back 75 years, or from 1837, record thereof should have been made in the books of the old *Anotaduría de Hipo-*

*tecas* and afterwards transferred to the modern books of the registry of property in accordance with article 397 of the Mortgage Law, which formality was not complied with.

*Fifth.* That the court committed error in deciding in favor of the Catholic church of Arecibo the possession of the four parcels of land to which the possessory title refers, accepting as true the testimony of the defendant's witnesses to the effect that those who have buildings constructed on said parcels of land paid a yearly rental to the hermitage when said witnesses do not agree as to the amount of said rental.

*Sixth.* That the court also committed error in accepting without other evidence than the testimony of the defendant, given as a proof of his possession, the fact that the Catholic church of Arecibo threatened to bring action and did bring action against those who refused to pay the annual rental for the lands of the hermitage occupied by them, there being no documentary proof of such actions in the record.

*Seventh.* That the doctrine that the payment by the church of taxes for one year on the parcels of land referred to confers upon it the character of owner thereof, is erroneous.

*Eighth.* That although the Catholic church alleges that it has been in possession of the four parcels of land for 75 years, it has failed to prove that it has been in the civil possession thereof, inasmuch as it has not proven that it has collected any sum whatever from the tenants of said lands.

*Ninth.* That the lower court, in violation of section 83 of the Law of Evidence, has failed to take into consideration the historical data relating to the Monserrate Hermitage, from which data it appears that the founder of the said hermitage was not Calixto Soto but Lorenzo González, in 1756, and that the site for the hermitage was granted by the Governor and Captain General of this Island from lands belonging to The People.

*Tenth.* That the appellant enjoys a right of ownership to the lot on which his house is constructed, even admitting the existence of the benevolent bequest, because he is protected

by section 1860 of the Civil Code, he having demonstrated suf-
ficiently that for more than 30 years the said lot has paid no
rent whatever to the Catholic church of Arecibo, the plain-
tiff being favored in the computation of the time for extra-
ordinary prescription by the time it was in the possession of
his predecessor.

Of the 10 grounds assigned in support of the appeal the
first nine do not merit our consideration, for in the case at
bar the right of the defendant to the possession sought to be
proven is not under consideration, but the right of the appel-
lant plaintiff to prevent the defendant from proving said pos-
session in the proceedings that he has already commenced in
the belief that he is entitled to a certain lot comprised in one
of the parcels of land referred to in the possessory title pro-
ceedings brought by the Vicar of Arecibo in representation
of the Monserrate Hermitage.

Let us examine the legal principles applicable to the case
which are to be found in subdivision 6 of article 391 of the
Mortgage Law, article 392 of the same law, and article 438
of its Regulations.

Subdivision 6 of article 391 reads as follows:

"Any person who believes that he has a right to the estates or a
part thereof, the record of which is requested through an information
as to possession, may institute a declaratory suit to enforce it before
the court of competent jurisdiction.

"The interposition of this claim and its entry in the registry shall
suspend the course of the proceedings with regard to the information,
or the entry thereof, should they already have been concluded and
approved."

Article 392 reads:

"Should the notice drawn in accordance with the form prescribed
in the preceding article be sufficient, and there be no opposition by
a person having a right thereto, or such opposition as was made hav-
ing been abandoned, the court shall approve the proceedings, and
order that the record requested be made in the registry without pre-
judice to a third person having a better claim."

Article 438 of the Regulations reads:

"In the proceedings to justify possession the person instituting them can not be required to present the title of acquisition of the estate or right, nor shall any opposition on the part of an interested person be admitted, except such as is limited exclusively to a right of possession in his own name.

"The question of right may be brought up in a declaratory suit only."

Considering the foregoing articles together we find that in the possessory title proceedings that which is sought to be proven is the fact of the possession by the person instituting the proceedings, as is shown by the third subdivision of article 391 above quoted, which provides that the witnesses shall limit their testimony to the statement that the person who instituted the proceedings possesses the estate in his own name, and this is corroborated by article 438 of the Regulations which directs that the person instituting the proceedings cannot be required to present the title of acquisition of the estate or right, and that no opposition on the part of an interested person shall be admitted except such as is limited exclusively to a right of possession in his own name. Such opposition to the right of possession in his own name should be made in the possessory title proceedings where the same must be approved or rejected in accordance with article 362 of the Mortgage Law.

Any other opposition involving questions of law should be set up in the corresponding declaratory action and such opposition may be made only by an interested party or by one who has an interest in the real estate the possession of which is involved.

In accordance with the foregoing principles the plaintiff, Juan Monclova, has opposed in the present declaratory action the possessory title proceedings instituted by the Reverend Rexach, alleging as a general ground for his opposition that he is the owner of the lot on which his house is

constructed by right of extraordinary prescription in that he has been in possession of the lot for more than 30 years.

Hence the only question to be considered in this suit is whether Monclova has acquired the ownership of the said lot by extraordinary prescription and whether by virtue of his right the possessory title proceedings brought by Reverend Rexach for lands in which said lot is included are improper.

It will be seen, however, that the plaintiff, Monclova, failed to allege in his complaint an essential fact for combining all the elements necessary to attend the possession in order to acquire an ownership title by virtue of prescription, whether it be ordinary or extraordinary. He has failed to allege that the possession enjoyed by the plaintiff and his predecessors of the lot was held by them in the character of owners, and only possession acquired and enjoyed in such character can serve as a title for the acquisition of owner-ship, according to section 449 of the Revised Civil Code. *Estate of Lampón* v. *Estate of Rivera,* 16 P. R. R., 321.

And the evidence which we find in the record presented by the plaintiff, Monclova, in regard to this point is the reverse of favorable to him.

Juan Monclova testified that the house and the lot on which it is constructed belong to him as he acquired the same two years ago from Dolores López Cruz who had been in possession of the lot for more than 35 years, during which time she paid absolutely nothing for its use to the Monserrate Hermitage, the said lot being comprised within one of the parcels of land included in the possessory title proceedings.

Dolores López Cruz testified that she sold the house to Monclova but not the lot; that she had always heard that the lot belonged to the "Alto de la Monserrate"; that the house belonged to Beltrán, her first husband, who died about eight or nine years ago and who had occupied the house during the seven years preceding his demise; that she lived in said house with her husband, first for seven years and then for

another four; that she was not interfered with during such possession, and that she had paid nothing in the way of house rent or ground rent.

Natalia Beltrán testified that the house belonged to her deceased sister, Dolores, who had constructed the same and about 10 years afterwards, when she married, sold it to their brother, José Beltrán, who occupied the same for 10 or 12 years, or up to the time of his death which occurred about eight years ago; that her sister, Dolores, sold nothing but the house to José Beltrán, but witness was unable to state whether the lot was included in the sale; that when one sells a house one sells the whole thing, and that she did not see anyone collect any rent, ground rent, or taxes of any description. All they did was to collect each year during the month of August contributions for the celebration of the Virgin of Monserrate, her brother, José Beltrán, being in the habit of giving 25 cents when he had the money, otherwise he gave nothing.

The testimony of these witnesses, which constitutes the evidence introduced by the plaintiff, Monclova, does not prove that the latter and his predecessor, Dolores López Cruz, were in possession of the lot in the capacity of owners. And if there should be any doubt about this, regardless of the other evidence introduced at the trial by the defendant, such doubt is removed by the recital in a statement filed by Monclova in the internal-revenue office at Arecibo declaring himself to be the owner of a house which, according to his statement, is situated on a lot measuring 8.80 meters by 7.70 meters which is said to belong to the Monserrate and for which he has been paying up to this time the sum of $3 yearly.

After weighing the evidence to which we have just referred together with the other evidence introduced by the defendant, the court of Arecibo reached the following conclusion:

"The Catholic Church by its bishop of the diocese of Porto Rico and through the priests of the parish church of Arecibo for a long

time past has been executing in response to petitions and requests made by persons desiring to construct or build on the said lots, permits or licenses to build on the corresponding lots; and it has been proven in addition that the priests and their successors in charge of the parish of Arecibo have been complying with the ecclesiastical duties in connection with religious worship in the Monserrate Hermitage with the rents, dues, and stipends or charitable contributions which they have collected from the owners of the houses constructed on the said lands.''

And we shall not controvert that conclusion which decided the conflict, if any there were, between the evidence introduced by the parties, there being no reason why we should diverge therefrom.

As may be seen, there is no evidence to prove the ownership title which Monclova claims by prescription because if he and his predecessors in interest did not have possession in the character of owners, said possession lacks an indispensable element to give title by prescription. The tenth and eleventh grounds of appeal are inadmissible.

Monclova not having proven the right he claims to the lot included in one of the parcels of land referred to in the possessory title proceedings, the decision of the case is not affected by the right or lack of right of ownership which the parish priest of Arecibo may or may not have to the same lot and to the parcels of land in litigation. Even though the defendant should have no right to the ownership of the lot whose possession he endeavors to prove in the possessory title proceedings, the failure to prove such ownership would not be sufficient ground for this court to decree that the lot belongs to Monclova, as is prayed for by him in his complaint.

The consideration of the first nine grounds of appeal could be attended by no practical results, as even supposing the lower court committed error in its findings upon the rights which the parish priest of Arecibo may have, such error would not influence the final decision of this case, the real

ground on which it rests being the lack of proof on the part of Juan Monclova of any right to a part of the parcels whose possession is claimed by the Reverend Rexach.

The judgment of the lower court must be affirmed without prejudice to the possessory or ownership rights that the parish priest of Arecibo may have to the lands referred to in the possessory title proceedings which originated the present suit.

*Affirmed.*

Justices Wolf, del Toro and Aldrey concurred.

Mr. Justice MacLeary did not take part in the decision of this case.